UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HORTON,

    Petitioner,                                               Civil Action No. 11-CV-11952

v.                                                     HON. BERNARD A. FRIEDMAN

GREG MCQUIGGIN,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S
APPLICATION FOR A WRIT OF HABEAS CORPUS**

Petitioner Robert Horton has filed a *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his convictions for three counts of first-degree criminal sexual conduct and one count of accosting a child for immoral purposes. Finding no basis for habeas relief, the Court shall deny the petition and decline to issue a certificate of appealability.

**I. Facts**

Petitioner was convicted following a jury trial in Isabella County Circuit Court. The Michigan Court of Appeals recited and relied on the following facts in denying Petitioner's appeal on direct review:

> In October 2006, defendant became the victim's martial arts teacher at the request of the victim's mother to counteract bullying the victim was experiencing at school. The victim described defendant as a big brother, teacher, and role model and testified that her relationship with defendant went far beyond a teacher-student relationship as the victim would periodically spend the night at defendant's house, accompany defendant on hunting outings, travel on overnight trips with defendant and his wife, and clean defendant's house for extra money. Defendant even disciplined the victim in front of her parents after the martial arts training began.

Not long after training commenced, in April 2007, defendant offered the victim alcohol while she was at his home and invited the victim into his bedroom to watch him masturbate and perform fellatio on him. The victim complied. Shortly thereafter, defendant informed the victim that he was a member of an "illegal organization" involved in prostitution, drugs, and weapons and invited the victim to join as a fighter or a dancer whereupon she could earn $50,000. Unbeknownst to the victim, no such "organization" existed. Frustrated with her mother and wanting to earn extra money, the victim underwent defendant's interview process, which involved her dancing and stripping in front of defendant before performing oral sex and masturbating on defendant's bed. Defendant videotaped all of these actions ostensibly as part of the interview.

Although the victim pleaded to leave the "organization" soon after joining, defendant threatened that if the victim left without completing certain "objectives," he would kill and rape the victim's family, sister, and friends. The objectives included carrying a substance the victim believed to be methamphetamine, takings pictures of fellow female classmates, and most importantly having sexual intercourse with defendant 500 times. The number of times the victim was required to have sex with defendant varied depending on whether she upset defendant. Defendant would relay these objectives by personally telling the victim that "Kevin" – the leader of the "organization"– had ordered their completion or by acting as "Kevin" and calling the victim on her cellular phone. Like the "organization," "Kevin" was also one of defendant's machinations. To disguise his identity when acting as "Kevin" on the phone, defendant utilized a voice changer making him sound like Darth Vader. The victim believed defendant and "Kevin" were two different persons, and although she told defendant she wanted out of the organization and to stop having sex with him, she was "deathly afraid" of "Kevin." The victim estimated that from April 2007 through April 2008, she engaged in sexual intercourse with defendant 63 times at various locations, in addition to numerous instances of oral sex. The victim noted that defendant always carried a gun or had it within arm's reach during sexual activity.

On April 9, 2008, the victim's mother overheard a strange voice talking to the victim on the phone, and after the victim informed her mother about the sexual abuse and "Kevin," the victim and her mother went to the police. It was not until discussing the incident with police that the victim realized defendant and "Kevin" were the same person. The victim later called defendant and

>recorded several subsequent telephone conversations with defendant acting as both himself and "Kevin." Defendant was arrested and convicted of CSC III, M.C.L. 750.520d(1)(a) (sexual penetration with a victim between 13 and 16 years of age), in Mountcalm County pursuant to a plea agreement. It was after this that an Isabella County jury found defendant guilty of the offenses underlying this appeal.

*People v. McQuiggin,* 2010 WL 624888, at \*\*1-2 (Mich. Ct. App. Feb. 23, 2010).

## II. Procedural History

Petitioner was convicted by a jury in Isabella County Circuit Court of three counts of first-degree criminal sexual conduct and one count of accosting a child for immoral purposes. On January 12, 2009, the trial court sentenced petitioner to concurrent terms of 18 to 40 years' imprisonment for each of the criminal sexual conduct convictions, and a consecutive term of 23 to 48 months in prison for the accosting a child for immoral purposes conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

>I. The petitioner's convictions for first-degree criminal sexual conduct and accosting should be overturned because there was insufficient evidence at trial to prove the petitioner guilty of the crimes – including a lack of proof as to venue.
>
>II. The petitioner's constitutional due process rights and right to present a defense and notice were violated because of: the length of time covered by the information (one year); the lack of specificity of when the specific events took place; the fact that four charges for several crimes were tried together; and there was a lack of proof of a unanimous verdict.
>
>III. The trial court denied the petitioner a fair trial and his due process rights by: allowing into evidence the Petitioner's statement to the police; allowing into evidence the telephone calls recorded by the victim's mother; and giving improper instructions.

The Michigan Court of Appeals affirmed petitioner's convictions. *See People v. Horton,* 2010 WL

3

624888 (Mich. Ct. App. Feb. 23, 2010). The Michigan Supreme Court denied leave to appeal. *See People v. Horton*, 488 Mich. 911 (2010).

> Petitioner then filed the instant habeas petition, raising the following claims:[1]
>
> I. The Michigan appellate courts ruled contrary to clearly established Federal Supreme Court precedent in failing to vacate defendant's conviction when there is no way to determine if defendant's verdict was from a unanimous jury where the defendant was not allowed to present a defense based upon the jury instructions.
>
> II. The Michigan appellate courts rendered an unreasonable determination of the facts and violated clearly established Federal Supreme Court case law and a federal statute in failing to vacate a conviction based upon illegal and improper admission of tape recordings denying the defendant his constitutional right to present the defense which in this case was the defense of consent based upon faulty jury instructions.

### III. Legal Standards

28 U.S.C. § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

---

[1] The "questions presented" in the petition and supporting brief do not accurately reflect all of the claims raised therein. The Court addresses the claims raised in the questions presented and the additional claims raised in the text of the brief.

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 789 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412.

Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  Further, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Discussion

#### A.

In his first habeas claim, petitioner argues that the lack of specificity in the information regarding the dates of the offenses and the actual charges denied him his right to due process and his right to present a defense.  He also argues that trial counsel's failure to object to the joinder of the charges was ineffective.

The Sixth Amendment guarantees a criminal defendant the right to be clearly informed of the nature of the charges against him in order that he may prepare a defense. *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948).  "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988) (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)).  A complaint or indictment "which fairly but imperfectly informs the accused of the offense for

6

which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986). In addition, the right of a defendant to present a defense is "a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The Supreme Court has described the "most basic ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense – a right to his day in court – are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

*Washington*, 388 U.S. at 18 (1967) (*quoting In re Oliver*, 333 U.S. 257 (1948)).

The Michigan Court of Appeals denied petitioner's claim that the information was not specific enough to provide him with reasonable notice of the charges against him and denied him his right to present a defense, reasoning, in relevant part:

> The information in this case alleged that the offenses occurred between April 2007 and April 2008. Consistent with these allegations, the victim testified that there were 63 encounters with defendant involving sexual penetration over the course of a year. On this alone, the information was sufficient to satisfy M.C.L. 767.51 for the CSC offenses, *Stricklin*, 162 Mich. App. at 634, 413 N.W.2d 457, and also for the accosting a child for an immoral purpose offense where the pertinent statute, M.C.L. 750.145a, makes no reference to time whatsoever.
>
> In any event, in view of the victim's testimony that 63 instances of sexual intercourse occurred periodically over the course of a year and that defendant provided her with marijuana and alcohol during every incident, it is understandable that the victim did not provide specific dates. Further, defendant not only failed to make a motion under M.C.L. 767.51 for specificity to enable him to meet the charge, but also defendant has failed to elaborate the "many ways" he was prejudiced other than to cite case law for generic problems that

7

> may result from a defective information. It is certainly not incumbent upon us to craft defendant's arguments on this score. *People v. Kevorkian*, 248 Mich. App. 373, 389, 639 N.W.2d 291 (2001). And while defendant asserts that the lack of specificity precluded him from presenting an alibi witness, this conflicts with his theory of the case—as stated in closing argument—that the sex was "consensual." Thus, there was no error let alone a violation of substantial rights.

*Horton*, 2010 WL 624888, at *5.

Petitioner has not cited any clearly established Supreme Court precedent holding that a charging document must specify the exact dates of alleged sexual abuse to satisfy due process. The Sixth Circuit has rejected a petitioner's claim in this context that the lack of specific dates and times in an indictment violated the right to adequate notice: "This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005). Petitioner has not established that precise dates were material to his defense or that the lack of such dates in the information interfered with his ability to defend himself. He vaguely references losing the potential for an alibi defense and the ability to call the witness' credibility into question. But, as noted by the Michigan Court of Appeals, his defense relied upon consent and he fails to explain how he otherwise would have been able to impugn the victim's credibility. Petitioner cannot legitimately claim that he lacked adequate notice of the charges against him, or that his defense was hampered. In short, petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent.

Next, petitioner claims that the charges were overly broad. Petitioner was charged with engaging in either vaginal, oral, or digital penetration with a victim between the ages of 13 and 16 and that he coerced the victim by using his authority, or alternatively, that he engaged in

penetration while armed with a weapon or an article used or fashioned to lead the victim to believe it was a weapon. Petitioner agues that because the charges allow for a variety of ways of committing the penetration and under two different sets of circumstances, the jury was not required to reach a unanimous verdict.

There is no federal constitutional right to a unanimous verdict. *See Rogers v. Howes*, 64 F. App'x 450, 454 (6th Cir. 2003). In *Schad v. Arizona*, 501 U.S. 624 (1991), the Supreme Court considered the constitutionality of an Arizona conviction rendered pursuant to jury instructions that did not require the jury to agree on one of the alternative theories of either premeditated murder or felony murder. The Supreme Court held that the jury instructions allowing for a conviction based upon such alternative theories were not unconstitutional. *See id.* at 630. The Supreme Court reasoned:

> We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission . . . In these cases, as in litigation generally, different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.

*Id.* at 631-32 (internal quotation omitted). Further, the Court held:

> If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law.

*Id.* at 636. Thus, while a jury must agree on all of the elements of an offense, it need not agree on the means by which all of the elements were accomplished. *See id.* at 631. Petitioner's unanimity claim fails to show the denial of a federal constitutional right.

Finally, petitioner argues that his attorney was ineffective in failing to object to the joinder of several charges in one proceeding. To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. Petitioner must show " errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *See Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

The Michigan Court of Appeals held that, under Michigan Court Rules, the charges were appropriately joined because they "reflected a series of acts constituting a single scheme or plan." *Horton*, 2010 WL 624888, at *6. The state court further held that trial counsel was not ineffective for failing to file a motion for severance because the motion would have been meritless.

10

*See id.* n.8. Because severance would not have been warranted under Michigan law, counsel was not ineffective for failing to request it. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) (attorney not required to file meritless motions).

**B.**

In the first part of his second habeas claim, petitioner argues that the trial court erred in admitting tape recordings of several telephone calls between petitioner and the victim, recorded by the victim's mother. He argues that admission of these recordings violated his rights under the Fourth Amendment, violated the federal wiretapping act, 18 U.S.C. § 2510, *et. seq.*, and denied him due process because a key portion of the conversation was deleted from the recording.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). The Sixth Circuit uses a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed

11

before trial. *See People v. Ferguson*, 376 Mich. 90 (Mich. 1965) (describing the availability of a pre-trial motion to suppress). Because Michigan provides a procedural mechanism for raising a Fourth Amendment claim, petitioner is entitled to relief only if he establishes that presentation of his claim was frustrated by a failure of that mechanism. He has not done so.

Petitioner raised this issue on direct appeal. The Michigan Court of Appeals addressed the issue and found any Fourth Amendment violation harmless. The Michigan Supreme Court denied leave to appeal. Petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claim in the Michigan courts. His disagreement with the state courts' conclusions on his Fourth Amendment claim does not render the state's procedural mechanism inadequate. This claim is barred by the rule in *Stone v. Powell*.

Petitioner next argues that the phone calls were taped in violation of the federal wiretapping act because they were obtained without a warrant. The prohibition against the recording of telephone calls does not apply when one of the parties to the call consents to the recording. *See Griffin v. City of Milwaukee*, 74 F.3d 824, 827 (7th Cir. 1996). Here, the victim consented to the recording and, therefore, no violation occurred.

Finally, petitioner argues that the admission of the recorded conversation violated his due process rights because the initial 20-minute conversation between petitioner and the victim was deleted. He argues that the deleted conversation was critical to his defense because it was during this conversation that he agreed to "role play" as "Kevin" and to "stay in character" throughout the subsequently recorded conversations. This, he argues, would have cast doubt on the victim's testimony that she did not know "Kevin" and petitioner were the same person. Petitioner also argues that his attorney was ineffective for failing to object to the admission of the recordings on this

12

ground.

Respondent argues that this claim is procedurally defaulted and that petitioner's ineffective assistance of counsel claim fails to excuse the procedural default. The Court finds it unnecessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *see Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003). Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

"Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). The Michigan Court of Appeals found no error in the admission of the recordings. The Michigan Court of Appeals credited the trial court's finding that, based upon the victim's testimony and petitioner's testimony, the deleted conversation would not have supported petitioner's story. The state court held that the admission of the conversations did not impact the outcome of the proceeding. Further, the state court held that counsel was not ineffective in failing to object to the admission of the recordings on the basis that they were incomplete. The Michigan Court of Appeals reasoned that because the recordings did not impact the proceedings, petitioner could not show he was prejudiced by counsel's failure to move to exclude them on the ground that they were incomplete.

Petitioner has failed to show that admission of the tape recording violated any right under the Constitution or denied him his right to a fair trial. Trial counsel's performance met an

objectively reasonable level of representation. Petitioner has not shown a reasonable probability that, if defense counsel had objected to the admission of the recordings on the basis that they were incomplete, the recordings would have been suppressed or the result of the proceeding would have been different. Habeas relief is denied on this claim.

### C.

Finally, petitioner claims the jury instructions denied him his right to a fair trial and to present a defense. He objects to the jury instructions on the following grounds: (1) the jury was not instructed on the defense of consent; (2) the trial court incorrectly instructed the jury on the aggravating circumstances of use of a weapon and use of a position of authority to coerce a victim; and (3) the jury was not instructed that it must reach a unanimous decision.

Respondent argues that petitioner waived consideration of these claims because defense counsel affirmatively accepted the jury instructions. As discussed above, the procedural default rule is not a jurisdictional bar to federal review of the merits of an issue, and the Court finds it more efficient in this case to decide the merits despite the default.

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012). Federal habeas relief lies for a jury instruction claim only when the "instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

The Michigan Court of Appeals held that, under Michigan law, petitioner was not entitled to an instruction on the defense of consent and that the jury was correctly instructed on the aggravating facts of each first-degree criminal sexual conduct offense. When a state appellate court

14

has assessed the necessity and adequacy of a particular jury instruction under state law, a federal habeas court cannot question that state-law finding. *See Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003). Therefore, petitioner's first two claims relating to the jury instructions are not cognizable.

Finally, the state court gave the following explanation for rejecting petitioner's argument that the trial court erred in failing to give a specific unanimity instruction:

> [T]he trial court instructed the jury that its verdict must be unanimous with respect to "the alternative options for the third element of criminal sexual conduct in the first degree," *i.e.*, whether defendant was armed with a weapon or whether defendant was in a position of authority and used this authority to coerce the victim to submit to the penetration. According to defendant, this instruction was deficient because it failed to require unanimity for the specific theory of penetration underlying each specific CSC I conviction.
>
> Our Supreme Court has held that where alternative acts are presented as evidence of the actus reus element of an offense, a general unanimity instruction is sufficient unless:
>
>> 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt. [*People v. Cooks*, 446 Mich. 503, 524, 521 N.W.2d 275 (1994).]
>
> Defendant's argument is flawed because the different theories under which defendant was charged merely constitute different ways of defining the element of sexual penetration. *People v. Lynn*, 223 Mich. App. 364, 367, 566 N.W.2d 45 (1997). In other words, the alternative acts were not materially distinct. Further, as defendant's theory of the case was that the victim consented, there was no reason to believe the jurors were confused about the factual basis of defendant's guilt. Accordingly, no specific unanimity instruction was required.

*Horton*, 2010 WL 624888 at *10 (footnote omitted).

As noted above, the Supreme Court has found that a case may be submitted to a jury on alternative theories and that a jury need not agree on "which overt act, among several, was the means by which a crime was committed." *Schad*, 501 U.S. at 630. Accordingly, petitioner cannot demonstrate that the state court's decision was contrary to or an unreasonable application of Supreme court precedent. Habeas relief is denied on this claim.

## V.  Certificate of Appealability and In Forma Pauperis Appeal

Federal Rule of Appellate Procedure 22 states that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will not issue a COA in this case. For the same reason, petitioner may not proceed on appeal in forma pauperis.

## VI.  Conclusion

For the reasons stated above,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue and that petitioner may not proceed on appeal in forma pauperis.

S/ Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

DATE:  April 16, 2014